<u>IN THE CHANCERY COURT FOR KNOX COUNTY, TENNESSEE</u>

| | |
|---|---|
| JOSHUA OWENSBY and<br>REBECCA OWENSBY,<br>Plaintiffs<br><br>v.<br><br>WALGREEN CO. and<br>WALGREENS BOOTS ALLIANCE, INC.,<br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Dkt. No. 206070-2

JURY DEMANDED

## COMPLAINT

COME NOW, the Plaintiffs, Mr. Joshua Owensby, and Ms. Rebecca Owensby (together, the "Plaintiffs"), by and through the undersigned counsel of record, and hereby sue Defendants, Walgreen Co. and Walgreens Boots Alliance, Inc. (together the "Defendants") for their repeated violations of the Tennessee Human Rights Act ("THRA"), the Tennessee Maternity and Adoption Care Leave Act ("TMACLA"), the Tennessee Pregnant Workers' Fairness Act ("TPWFA"), the Tennessee Public Protection Act ("TPPA"), and the Family and Medical Leave Act ("FMLA"), and to recover damages for the Defendants' severe and intentional infliction of emotional distress upon them. For their causes of action against Defendants. Plaintiffs do hereby complain and aver as follows:

## I. THE PARTIES

1. Plaintiff Joshua Owensby ("Joshua") is a citizen and resident of Knox County, Tennessee.

1

EXHIBIT
1

2.     Plaintiff Rebecca Owensby ("Rebecca") is a citizen and resident of Knox County, Tennessee.

3.     Defendant Walgreen Co. ("Walgreen") is an Illinois corporation which is duly registered to do business and does, in fact, customarily and regularly conduct business and employs multiple individuals at various pharmacies located across the state of Tennessee including multiple locations in Knox County, Tennessee. Walgreen can be served with process via its registered agent, The Prentice Hall Corporation System, Inc., 2908 Poston Avenue, Nashville, TN 37203-1312.

4.     Defendant Walgreens Boots Alliance, Inc., ("WBA") is a Delaware corporation which, upon information and belief, has not registered to do business in the state of Tennessee but which customarily and regularly conducts business and employs multiple individuals at various pharmacies located across the state of Tennessee including multiple locations in Knox County, Tennessee. WBA can be served with process through the Tennessee Secretary of State.

5.     Upon information and belief, at all times relevant to this Complaint, Defendants Walgreen and WBA ran their businesses jointly, were owned by common ownership, jointly codetermined the matters governing the essential terms and conditions of employment for the employees of each entity and had the authority to hire or fire employees of each entity as a joint employer of both Joshua and Rebecca.

2

6.     In the alternative, upon information and belief, at all times relevant to this Complaint, Defendants Walgreen and WBA were nominally separate entities that operated as a single integrated enterprise, intermingled their operations and resources, and were controlled by a substantially common management such that they constituted the single employer of both Joshua and Rebecca.

## II.     JURISDICTION AND VENUE

7.     Jurisdiction is proper in this Court pursuant to Tenn. Code Ann. §§ 4-21-311, 4-21-408, 16-11-102, 50-1-304, and 50-10-104 as well as 29 U.S.C. § 2617.

.8.     Venue is proper in Knox County pursuant to Tenn. Code Ann. §§ 20-4-101 and -4-104(1) because it is the county in which the Plaintiffs' causes of action arose and where all or substantial part of the events or omissions giving rise to the Plaintiffs' causes of action accrued.

## III.     FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

### A. Background—Employment of Joshua and Rebecca

1.     Joshua and Rebecca are husband and wife and former employees of Defendants Walgreen and WBA who experienced discrimination, harassment, retaliation while they were employed by Defendants and were terminated by Defendants in violation of Tennessee and federal law.

2.     At all times relevant to this Complaint, Defendants Walgreen and WBA owned and operated a chain of drugstores and pharmacies throughout the

3

state of Tennessee with approximately thirteen (13) locations in the Knoxville and Knox County, Tennessee area.

3.    Upon information and belief, at all times relevant to this Complaint, Defendants jointly or individually employed at least one hundred (100) employees in the State of Tennessee.

4.    At all times relevant to this Complaint, Joshua and Rebecca were pharmacists, duly licensed by the State of Tennessee, without any history of any disciplinary action by the Tennessee Board of Pharmacy.

5.    Joshua is of Mexican-American heritage and nationality and the Hispanic race.

6.    In 2010, Joshua satisfied all of the requirements to be licensed as a pharmacist in the State of Tennessee. Soon after, he was hired by Defendants as a staff pharmacist. In 2016, Joshua voluntarily terminated the employment relationship to accept another employment opportunity, but in April 2020 Defendants re-hired Joshua as a staff pharmacist to work at Store #5729 in Knoxville, Tennessee. Joshua also worked as a floater pharmacist, rotating among Defendants Walgreen and WBA's various pharmacies across 4 different districts in Knoxville, Knox County, and the surrounding counties.

7.    Joshua was employed by Defendants as a staff pharmacist and floater pharmacist from April 2020 until Defendants wrongfully terminated his employment on January 11, 2022.

4

8.      While he was employed by Defendants, Joshua was paid a substantial hourly wage, had medical and life insurance benefits, a 401K with employer matching, and was eligible for multiple other benefits.

9.      In 2011, Rebecca satisfied all of the requirements to be licensed as a pharmacist in the State of Tennessee. After achieving licensure, she went to work for CVS where she eventually became a District Leader, responsible for seventeen (17) stores.

10.     In November 2019, Defendants hired Rebecca as a staff pharmacist to work at Store #6993 in Maryville, Tennessee. In November 2020, Rebecca was promoted to Pharmacy Manager and Front-of-the-Store Manager at Store #21264 in North Knoxville.

11.     After the promotion, Rebecca reported directly to District Manager Scott Leslie and was eligible for bonuses based on the store's revenues. Rebecca also worked a Monday through Friday schedule with occasional work on the weekends. Rebecca was employed in this position, working at Store #21264 until she began maternity leave in September 2021.

12.     While she was employed by Defendants, Rebecca was paid a substantial hourly wage, had medical and life insurance benefits, a 401K with employer matching, and was eligible for multiple other benefits.

B. Maternity / Paternity Leave

13.     In 2021, Joshua and Rebecca learned that Rebecca was pregnant. The expected delivery date was in November 2021, and both Rebecca and Joshua gave

5

Defendants notice both of the expected due date and that they would both be taking maternity and paternity leave under the TMACLA, the FMLA, and Defendants' maternity and paternity leave policies.

14. Upon information and belief, at all times relevant to this Complaint, Defendants had a policy and practice of providing maternity leave pursuant to which female employees were entitled to be provided with a combination of paid leave and unpaid leave, could maintain all benefits, and then were to be returned to the same or substantially similar position at the conclusion of the leave (the "Maternity Leave Policy"). At all times relevant to this Complaint, Rebecca was eligible for maternity leave under Defendants' Maternity Leave Policy.

15. Upon information and belief, at all times relevant to this Complaint, Defendants had a policy and practice of providing paternity leave pursuant to which male employees were provided a combination of paid and unpaid leave, could maintain all benefits, and then were to be returned to the same or substantially similar position at the conclusion of the leave (the "Paternity Leave Policy"). Upon information and belief, the Paternity Leave Policy provided substantially less leave time to male employees than the Maternity Leave Policy provided to female employees. At all times relevant to this Complaint, Josh was eligible for paternity leave under Defendants' Paternity Leave Policy.

16. Due to a medical emergency, Rebecca was forced to begin maternity leave in September 2021 and provided Defendants with proper notice of the same.

6

Pursuant to the Maternity Leave Policy, Rebecca was provided with paid maternity leave from September 2021 until March 2022.

17.     When the baby was born in November 2021, Joshua renewed his request to take paternity leave. Defendants denied the request, and Joshua was told he had to wait until Rebecca returned to work before he could take any leave.

18.     Joshua was wrongfully terminated on January 11, 2022, without being permitted to take any leave for the birth of his child other than using his accrued PTO to take a few days off.

## C. Rebecca's Demotion and Transfer to Store #17817 in Wartburg, TN

19.     In February 2022, Rebecca's supervisor, District Manager Scott Leslie, contacted her regarding her return to work. Mr. Leslie informed her that she was not going to be returned to her position as Pharmacy Manager and Front-of-the-Store Manager of Store #21264 in North Knoxville.

20.     Instead, Defendants demoted Rebecca to Pharmacy Manager and transferred her to Store #17817 in Wartburg, Tennessee.

21.     At Store #17817, Rebecca no longer reported to the District Manager, but reported to the Store Manager, and she was no longer eligible for bonuses based on the store's revenues but was only eligible for much smaller bonuses. The transfer to Wartburg, Tennessee also increased Rebecca's commute from around 27 miles to 42 miles in each direction—without additional compensation—and Rebecca was required to regularly work on the weekends.

22. Rebecca commuted to and worked at Store #17817 in Wartburg, Tennessee as a Pharmacy Manager until she was wrongfully terminated on June 13, 2022.

**D. Racially and Sexually Hostile Work Environment**

23. After she began working at Store #17817 in Wartburg, Tennessee, Rebecca soon realized that the workplace was a racially and sexually hostile work environment.

24. For example, Defendants' employees who worked at Store #17817 referred to an employee of Middle Eastern descent as a "suicide bomber" and other disparaging labels. These comments were made in the context of a series of group text messages involving Manager Poe and the other pharmacy employees. Rebecca was copied on the group text messages and found them personally offensive and harassing.

25. Further, when Rebecca was present and in group text messages in which Rebecca was included, Defendants' employees repeatedly made sexually explicit comments, vulgar comments about female and male genitalia, and inappropriate comments about their own sexual activities and that of others. Manager Poe was also present when some of these comments were made and participated in the group text messages in which these comments were made. Rebecca found these written and verbal comments to be personally offensive and harassing.

8

26.     Although Rebecca's supervisor, Manager Poe had knowledge of and participated in these harassing and offensive comments, Rebecca still reported the conduct to Manager Poe and asked Manager Poe to take action to stop the harassing and offensive comments.  Manager Poe did nothing.

27.     In addition, Rebecca filed a complaint regarding the harassing and offensive comments and environment at Store #17817 via the Defendants' Ethicspoint portal which, to Rebecca's knowledge, was the proper means to report a sexually and racially hostile work environment.

28.     Rebecca was suspended four (4) days later.

29.     Rebecca filed a second, more detailed complaint via the Defendants' Ethicspoint portal, and Defendants terminated Rebecca's employment a few hours later.

**E.  Joshua's and Rebecca's Reports of Defendants' Illegal Activities**

30.     Soon after she was transferred to Store #17817 in Wartburg, Tennessee, Rebecca began discovering numerous violations of federal law and U.S Drug Enforcement Administration ("DEA") regulations governing the operation of pharmacies, Tennessee law and regulations governing the operation of pharmacies, and Defendants' policies and procedures including the following:

   a.  Pursuant to federal and state regulations, Rebecca was supposed to take an initial inventory of all controlled substances and maintain accurate records of the inventory (21 U.S.C. § 821(a)(1); 21 C.F.R. § 1304.11; Tenn. R. & Regs. Ch. 1140-03.14). Rebecca's supervisor, store

9

manager Lisa Poe, instructed Rebecca to not take the required inventory but to allow the pharmacy technicians and the staff pharmacist to take the inventory.

b. Initially, Rebecca acquiesced to Manager Poe's directive, but when Rebecca later performed her own inventory, she determined that the counts of controlled substances were inaccurate and that controlled substances were missing. Rebecca conducted subsequent counts and determined that the counts of controlled substances routinely were missing. Rebecca repeatedly reported these violations of federal and state regulations to Manager Poe and to Defendants' Loss Prevention Department, which upon information and belief, was the designated procedure to report such violations.

c. Federal regulations (21 C.F.R. § 1304.22) require a pharmacy to accurately count and record the number of controlled substances each time an order was received. Rebecca learned that the staff pharmacist at Store #17817 was signing off on invoices for controlled substances before the order was even received, thereby representing that the controlled substances that were ordered before the orders were delivered. Rebecca reported this violation of federal regulations to her supervisor, Manager Poe.

d. Federal regulations (21 C.F.R. §§ 1304.04, 1306.05, 13.06.22), require that prescriptions for schedule II, III, IV, and V controlled substances

10

be kept in a secured, separate file. This was not being done at Store #17817, and Rebecca reported this violation of federal regulations to her supervisor, Manager Poe.

e. Shortly after Rebecca began working at Store #17817, Rebecca discovered that the gate to the pharmacy did not lock and the door to the office where the safe and the pharmacy keys were located also did not lock. Rebecca also discovered that the keys for the floater pharmacist were not being kept in a sealed envelope, that there was no log of who had used the keys, and that a pharmacy technician was in possession of the staff pharmacist's key for over a week with full access to the pharmacy. All of these are violations of Tennessee regulations for pharmacies (Tenn. R. & Regs. 1140-01-.13) Rebecca reported these violations to her supervisor, Manager Poe.

f. Federal regulations require pharmacists to maintain a bound logbook in which the pharmacist verifies that the refill information entered into the computer has been reviewed by the pharmacist and is accurate (21 C.F.R. § 1306.22(f)). Rebecca learned that Store #17817 had not had the required logbook since December 2021, reported this violation to Manager Poe, and repeatedly asked Manager Poe to order the mandatory logbook. None was provided to Rebecca until June 7, 2022, days before she was terminated.

11

g. Rebecca learned that the pharmacy technicians were falsifying the results of certain COVID-19 tests, and she reported these violations to her supervisor, Manager Poe.

31. Additionally, Rebecca reported these violations of various federal and state laws and regulations to District Manager Scott Leslie and to Defendants' Loss Prevention Department.

32. In late 2020 and early 2021, Joshua was tasked with administering COVID-19 vaccinations at various of Defendants' pharmacies as part of "Operation Warp Speed."

33. Upon information and belief, federal law required that Defendants maintain Vaccine Administration Records ("VARs") as evidence that the patients were healthy enough to be administered the vaccination. The VARs were supposed to have 2 signatures—that of the patient and that of a medical professional signifying that the patient was healthy enough for the vaccination.

34. Joshua learned that some of the VARs only had one signature—that of the patient, the patient's caregiver, or the patient's POA rather than the signatures of the patient and the patient's healthcare provider. Joshua reported this violation to the District Manager, Scott Stinnett and refused to administer the vaccination to the individuals whose VARs were not properly signed.

35. Joshua also discovered that the paperwork from several of Defendants' COVID-19 vaccination clinic did not contain all of the details required for billing under various federal programs. Joshua reported this violation to District Manager

12

Stinnett as well and stated that he would report the violation to Healthcare Supervisor Keith Ford.

36.     Joshua was instructed not to inform Healthcare Supervisor Ford and informed that he would be reprimanded if he continued to complain about the improper billing records.

37.     A few months later, Joshua's employment was terminated purportedly because, six (6) weeks earlier, Joshua pulled a discarded coupon out of a trash can and used it to obtain a $5.00 discount off of a $35.00 purchase.


## IV.     CAUSES OF ACTION

A. Claims under the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-104, *et seq.*

   a. Racial and National Origin Discrimination and Harassment against Joshua in Violation of the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-104, *et seq.*

38.     Plaintiffs incorporate the allegations of Paragraphs 1-37 herein and further allege as follows.

39.     At all times relevant to this Complaint, Defendants, individually or as joint employers or as a single employer, employed eight (8) persons or more in the state of Tennessee.

40.     At all times relevant to this Complaint, Joshua was a male minority of Mexican-American nationality and of the Hispanic race who was employed by Defendants.  Upon information and belief, Joshua was one of only a few, minority pharmacists employed by Defendants in the Knoxville and Knox County area.

13

41.     At all times relevant to this Complaint, Joshua was fully qualified for the position of staff pharmacist and did, in fact, satisfactorily perform his job duties.

42.     Upon information and belief, at all times relevant to this Complaint Defendants had a Paternity Leave Policy pursuant to which Joshua was eligible to take paid and unpaid leave after the birth of his child in November 2021.

43.     Defendants' denied Joshua's initial request for paternity leave and instead, misled him by telling him that he could take leave whenever Rebecca returned to work.

44.     Upon information and belief, Defendants regularly granted paternity leave upon request to similarly situated, non-minority employees who are not of Mexican-American nationality or the Hispanic race and did not require them to wait until an undetermined time in the future to take paternity leave.

45.     Defendants' immediately terminated Joshua's employment purportedly for using a discarded coupon six (6) weeks earlier but, upon information and belief, do not immediately terminate other, similarly situated employees who are not of Mexican-American nationality or the Hispanic race who engage in more egregious conduct.

46.     Defendants' purported reason for terminating Joshua's employment—the use of a discarded coupon—was pretextual.

47.     By engaging in the foregoing, Defendants created or allowed a hostile work environment due to Joshua's nationality and race with ongoing and continuous violations of the THRA, Tenn. Code Ann. § 4-21-104, *et seq.*

14

48.     By engaging in the foregoing, Defendants discriminated against Joshua because of his nationality and his race in violation of the THRA, Tenn. Code Ann. § 4-21-104, *et seq.*

49.     As a result of Defendants' discriminatory and harassing conduct and violations of the THRA, Joshua has sustained substantial economic and non-economic damages for which Defendants are jointly and severally liable.

**b. Sex Discrimination against Joshua in Violation of the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-104, et seq.**

50.     Plaintiffs incorporate the allegations of Paragraphs 1-49 herein and further allege as follows.

51.     At all times relevant to this Complaint, Joshua was a male employee of Defendants who was fully qualified for the job of staff pharmacists.

52.     Upon information and belief, at all times relevant to this Complaint, Defendants had adopted and implemented a maternity leave policy which provided leave to female employees upon the birth of a child and a paternity leave policy which provided leave to male employees upon the birth of a child.

53.     Upon information and belief, at all times relevant to this Complaint, Defendants' paternity leave policy provided Joshua and other male employees with substantially less benefits than the maternity leave policy provided to female employees.

54.     Upon information and belief, at all times relevant to this Complaint, Defendants' paternity leave policy was, on its face, discriminatory toward Joshua

15

and other male employees, and Defendants have a pattern and practice of discriminating against male employees, including Joshua, in both the inequitable paternity leave offered and in the implementation of the paternity leave policy—by requiring male employees to wait to take paternity leave or, as in Joshua's case, by preventing them from taking paternity leave.

55. By engaging in the foregoing, Defendants discriminated against Joshua on the basis of his sex in violation of the THRA, Tenn. Code Ann. § 4-21-104, *et seq.*

56. As a result of Defendants' discriminatory conduct and violations of the Tennessee Human Rights Act, Joshua has sustained substantial economic and non-economic damages for which Defendants are jointly and severally liable.

 

      **c. Sexually and Racially Hostile Work Environment Discrimination as to Rebecca in Violation of the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-104, *et seq.***

57. Plaintiffs incorporate the allegations of Paragraphs 1-56 herein and further allege as follows:

58. At all times relevant to this Complaint, Rebecca was a female employee of Defendants who was fully qualified for the position of Pharmacy Manager and the dual role of Pharmacy Manager and Front-of-the-Store Manager.

59. Defendants created or allowed a sexually and racially hostile work environment at Store #17817 and required Rebecca to work in that environment despite her multiple complaints.

16

60. Defendants had full knowledge of the sexually and racially hostile work environment at Store #17817 but did nothing to cause it to cease or to otherwise protect Rebecca from it.

61. The foregoing constitutes discriminatory practices in violation of the THRA.

62. As a result of Defendants' discriminatory conduct and violations of the THRA, Rebecca has sustained substantial economic and non-economic damages for which Defendants are jointly and severally liable.

**B. Rebecca's Claim under the Tennessee Pregnant Workers' Fairness Act, Tenn. Code Ann. § 50-10-101, *et seq.***

63. Plaintiffs incorporate the allegations of Paragraphs 1-62 herein and further allege as follows:

64. At all times relevant to this Complaint, Defendant Walgreen and Defendant WBA individually or collectively as joint employers or as a single employer employed more than fifteen (15) employees, and Rebecca was an employee of Defendants.

65. Defendants violated the TPWFA and engaged in an unlawful employment practice by taking the adverse action of demotion, transfer, and termination against Rebecca because she requested and used a reasonable accommodation of leave for her pregnancy, childbirth, and related medical conditions.

17

66.     As a result of Defendants' unlawful employment practice, Rebecca has sustained substantial economic and non-economic damages for which Defendants are jointly and severally liable.

### C. Joshua and Rebecca's Claims under the Tennessee Maternity and Adoption Care Leave Act, Tenn. Code Ann. § 4-21-408

67.     Plaintiffs incorporate the allegations of Paragraphs 1-66 herein and further allege as follows:

68.     At all times relevant to this Complaint, Defendant Walgreen and Defendant WBA individually or collectively as joint employers or as a single employer employed more than one hundred (100) full-time employees on a permanent basis in the State of Tennessee and in the Knox County region.

69.     At all times relevant to this Complaint, both Joshua and Rebecca had been employed by Defendants for at least twelve (12) consecutive months as full-time employees prior to November 2021 when their daughter was born.

70.     Both Joshua and Rebecca gave Defendants proper notice of the need to take leave for the birth of their child.

71.     At all times relevant to this Complaint, both Joshua and Rebecca were eligible for up to four (4) months of leave for the birth of their child and to be restored to their previous or similar positions with the same status, pay, length of service credit and seniority as of the date of their leave under the Tennessee Maternity and Adoption Care Leave Act, Tenn. Code Ann. § 4-21-408.

18

72.     Defendants violated the TMACLA by failing to provide the leave required by the TMACLA to Joshua upon the birth of his child, requiring him to wait until Rebecca returned to work from maternity leave before he could take leave, and then terminating his employment for a pretextual reason in order to prevent him from being able to take TMACLA leave.

73.     Defendants violated the TMACLA by failing to restore Rebecca to her previous or similar position with the same status, pay, length of service credit and seniority as of the date of her leave but instead demoting her from Pharmacy Manager and Front-of-the-House Manager reporting to the District Director and eligible for bonuses based on the store's performance, to Pharmacy Manager reporting to the store manager and ineligible for bonuses based on the store's performance.

74.     Defendants violated the TMACLA by failing to restore Rebecca to her previous or similar position with the same status, pay, length of service credit and seniority as of the date of her leave and transferring her from a store in Knox County to a store in Wartburg, Tennessee, thereby requiring a substantially longer commute with no additional compensation.

75.     As a result of Defendants' discriminatory conduct and violations of the TMACLA, Rebecca has sustained substantial economic and non-economic damages for which Defendants are jointly and severally liable.

76. As a result of Defendants' discriminatory conduct and violations of the TMACLA, Joshua has sustained substantial economic and non-economic damages for which Defendants are jointly and severally liable.

**D. Joshua's Claim for Unlawful Interference with his Protected Rights under the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq.***

77. Plaintiffs incorporate the allegations of Paragraphs 1-76 herein and further allege as follows:

78. At all times relevant to this Complaint, Defendant Walgreen and Defendant WBA individually or collectively as joint employers or as a single employer employed more than fifty (50) employees within a 75-mile radius of the pharmacies where Joshua was assigned to work.

79. Prior to November 2021, when his child was born, Joshua had been employed by Defendant Walgreen or Defendant WBA individually or collectively as joint employers or as a single employer for more than 12 months and had worked more than 1,250 hours during the 12 months prior to November 2021.

80. At all times relevant to this Complaint, Joshua was eligible for leave under the FMLA due to the birth of his child.

81. Joshua gave Defendants proper notice of the need to take FMLA leave for the birth of his child.

82. Defendants denied Joshua's request for leave and informed him that he could not take leave until Rebecca returned from maternity leave.

20

83.     Defendants terminated Joshua's employment for pretextual reasons before Rebecca returned from maternity leave in order to prevent Joshua from taking FMLA leave.

84.     Defendants engaged in prohibited conduct under the FMLA by interfering with, restraining, or denying Joshua his rights under the FMLA.

85.     As a result of Defendants' violations of the FMLA, Joshua has sustained substantial economic and non-economic damages for which Defendants are jointly and severally liable.

E.  Retaliatory Discharge under the Tennessee Public Protection Act, Tenn. Code Ann. § 50-1-304 and the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-104, *et seq.*

86.     Plaintiffs incorporate the allegations of Paragraphs 1-85 herein and further allege as follows:

87.     At all times relevant to this Complaint, Defendants, either individually or collectively as joint employers or a single employer were a "private employer" within the meaning of the TPPA and an "employer" under the THRA.

88.     At all times relevant to this Complaint, Joshua and Rebecca were both "employees" of Defendants, either individually or collectively as joint employers or a single employer within the meaning of the TPPA and the THRA.

89.     Defendants engaged in illegal activities as defined by the TPPA by violating multiple federal and state laws and regulations governing controlled

substances, the administration of the COVID-19 vaccination and the operation of licensed pharmacies.

90.    In the alternative, Joshua and Rebecca reasonably believed that Defendants engaged in illegal activities as defined by the TPPA by violating multiple federal and state laws and regulations governing controlled substances, the administration of the COVID-19 vaccination and the operation of licensed pharmacies.

91.    Joshua refused to participate in or remain silent about these illegal activities and, as a result, was verbally reprimanded and then terminated a few weeks later.

92.    The purported reason for Joshua's termination was entirely pretextual.

93.    Rebecca refused to participate in or remain silent about these illegal activities and regarding the racially and sexually hostile work environment created or permitted by Defendants, and, as a result, was terminated.

94.    The purported reason for Rebecca's termination was entirely pretextual.

95.    As a result of Defendants' retaliatory discharge in violation of the TPPA, Joshua has sustained substantial economic and non-economic damages for which Defendants are jointly and severally liable.

96.    As a result of Defendants' retaliatory discharge in violation of the TPPA and the THRA, Rebecca has sustained substantial economic and non-economic damages for which Defendants are jointly and severally liable.

22

## F. Intentional Infliction of Emotional Distress

97.   Plaintiffs incorporate the allegations of Paragraphs 1-96 herein and further allege as follows:

98.   The Defendants' conduct toward and treatment of Joshua and Rebecca was intentional or reckless and was so outrageous that it is not to be tolerated by a civilized society.

99.   Defendants' conduct inflicted serious mental injury and emotional distress upon Joshua for which he has had to seek medical treatment.

100.   Defendants' conduct inflicted serious mental injury and emotional distress upon Rebecca for which she has had to seek medical treatment.

101.   Defendants are jointly and severally liable for the intentional emotional distress and serious mental injury that they inflicted upon Joshua and upon Rebecca.

## V.   PRAYERS FOR RELIEF

NOW THEREFORE, Plaintiffs pray that this Court will grant them relief as follows:

1.   That service of process issue against Defendants Walgreen Co. and Walgreens Boots Alliance, Inc. requiring them to answer this Complaint within the time and in the manner permitted by law;

2.   That a jury be empaneled pursuant to Tenn. Code Ann. § 21-1-103, to determine all issues properly triable by a jury;

3. That Joshua be awarded judgment against Defendants Walgreen Co. and Walgreens Boots Alliance, Inc., jointly and severally, for back pay, front pay, compensatory damages, punitive damages, prejudgment interest, and all other damages and remedies available under applicable law for Defendants' violations of the Tennessee Human Rights Act, the Tennessee Maternity and Adoption Care Leave Act, the Tennessee Public Protection Act, and the Family and Medical Leave Act in an amount to be proven at trial, but no less than $750,000.00;

4. That Joshua be awarded all compensatory and punitive damages available against Defendants, jointly and severally, for engaging in intentional infliction of emotional distress in an amount to be determined at trial but not less than $1,000,000.00;

5. That Rebecca be awarded judgment against Defendants Walgreen Co. and Walgreens Boots Alliance, Inc., jointly and severally, for back pay, front pay, compensatory damages, punitive damages, prejudgment interest, and all other damages and remedies available under applicable law for Defendants' violations of the Tennessee Human Rights Act, the Tennessee Maternity and Adoption Care Leave Act, the Tennessee Pregnant Workers Fairness Act, the Tennessee Public Protection Act, and the Family and Medical Leave Act in an amount to be proven at trial, but no less than $750,000.00;

6. That Rebecca be awarded all compensatory and punitive damages available against Defendants, jointly and severally, for engaging in intentional

infliction of emotional distress in an amount to be determined at trial, but no less than $1,000,000.00;

7.   That Plaintiffs be awarded all of their attorneys' fees, litigation expenses, and costs for the prosecution of their claims as provided under the Tennessee Human Rights Act, the Tennessee Pregnant Workers Fairness Act, the Tennessee Maternity and Adoption Care Leave Act, the Tennessee Public Protection Act, and the Family and Medical Leave Act;

8.   That Plaintiffs be awarded prejudgment and post-judgment interest.

9.   That all costs be taxed to the Defendants for which execution shall issue; and

10.   That Plaintiffs be awarded such other, further, and general relief to which they may be entitled at law or equity.

RESPECTFULLY SUBMITTED, this _6th_ day January, 2023.


MELISSA B. CARRASCO, ESQ. BPR#029094
EGERTON, McAFEE, ARMISTEAD & DAVIS, P.C.
900 South Gay Street, Suite 1400
Knoxville, Tennessee 37902
(865) 546-0500
*Attorneys for Plaintiffs Joshua Owensby and Rebecca Owensby*

25

## COST BOND

This is to certify that the undersigned is surety in this cause for the principals, Joshua Owensby and Rebecca Owensby for all costs and taxes in this cause in accordance with Tennessee Code Annotated section 20-12-120.

EGERTON, McAFEE, ARMISTEAD & DAVIS, P.C.

By: _____

26