UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| REBECCA OWENSBY, | ) |
| Plaintiff, | ) |
| v. | ) No. 3:23-CV-58-TRM-DCP |
| WALGREEN CO. and WALGREENS BOOTS ALLIANCE, INC., | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of this Court, and Standing Order 13-02.

Now before the Court is Plaintiff's Motion to Compel Discovery and for Sanctions [Doc. 39]. Defendants responded in opposition to the motion, noting that they had produced supplemental responses [Doc. 40]. Based on this representation, the Court ordered the parties to meet and confer and to submit a joint status report on the motion [Doc. 41]. The parties submitted their joint status report, wherein they represent that Defendants agreed to "reevaluate the scope of [their] privilege log and supplement the same if necessary"[1] and that the parties had resolved the issues with Interrogatory Nos. 10–12 and Request for Production ("RFP") Nos. 11, 12, 16, 17, 18, 24, 28–29. For the reasons set forth below, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's motion [**Doc. 39**].

---

[1] To the extent that there are unresolved issues with Defendants' privilege log, they may state so in their joint status report as further explained below.

## I. BACKGROUND

According to the allegations in the Amended Complaint, Defendants "owned and operated a chain of retail drugstores and pharmacies throughout the state of Tennessee with approximately thirteen (13) retail stores in the Knoxville and Knox County, Tennessee district location" [Doc. 17 ¶ 2]. Plaintiff is a pharmacist and Defendants' former employee [*Id*. ¶¶ 1, 4]. In 2021, Plaintiff learned that she was pregnant with an expected delivery date of November 2021 [*Id*. ¶ 10]. "[She] gave Defendants notice both of the expected due date and that she would be taking maternity leave under the [Tennessee Maternity and Adoption Leave Act ("TMLA")], the [Family Medical Leave Act ("FMLA")], and Defendants' maternity leave policies" [*Id*.]. Later, in September 2021, Plaintiff experienced pregnancy related complications that "substantially limited the functioning of her circulatory and cardiovascular systems and her ability to walk, stand, and work" [*Id*. ¶¶ 12–13]. She requested an accommodation of temporarily leaving, but according to Plaintiff, Defendants denied this request [*Id*. ¶ 15]. Due to these complications, Plaintiff states that she "was forced to begin maternity leave in September 2021[,]" and she provided Defendants proper notice of the same" [*Id*. ¶ 19]. Defendants provided Plaintiff with paid maternity leave from September 2021 until early March 2022 [*Id*. ¶ 21].

In February 2022, Plaintiff's supervisor, District Manager Scott Leslie, told her that she would not return to her position as pharmacy manager and front-of-the-store manager in store #212164 in North Knoxville because it was a "specialty store" and she was not qualified [*Id*. ¶¶ 22–23]. Defendants later "demoted [Plaintiff] to solely [p]harmacy [m]anager and transferred her to Store #17817 in Wartburg, Tennessee" [*Id*. ¶ 25].

Plaintiff alleges that "the workplace [in Wartburg] was a racially and sexually hostile work environment" [*Id*. ¶ 28]. The employees made disparaging comments about an employee and

"made sexually explicit comments" in a group text [*Id*. ¶¶ 29–30]. The manager was part of these discussions [*Id*.]. Despite his involvement, Plaintiff reported the conduct to the manager who "did nothing" [*Id*. ¶ 31]. "[Plaintiff] filed multiple complaints regarding the harassing and offensive comments and environment" at the Wartburg store [*Id*. ¶ 32]. In addition, she reported "numerous violations of federal law and U.S. Drug Enforcement Administration ("DEA") regulations governing the operations of pharmacies, Tennessee law and regulations governing the operations of pharmacies, and Defendants' policies and practices" [*Id*. ¶ 35]. She also "reported these violations of various federal and state law regulations to District Manager Scott Leslie and to Defendants' Loss Prevention Department" [*Id*. ¶ 36]. She was subsequently suspended for four days and then later terminated [*Id*. ¶ 33]. According to Plaintiff, during the termination meeting, "Defendants' agents repeatedly mentioned [her] bi-poplar disorder and asserted that her bipolar disorder interfered with her ability to perform her job duties" [*Id*. ¶ 34].

Based on the above, Plaintiff alleges (1) a sexually and racial hostile work environment under the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. § 4-21-104 *et seq*., and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, *et seq*., (2) sex and pregnancy discrimination and relation in violation of the THRA and Title VII, (3) violation of the Tennessee Pregnant Workers' Fairness Act, (4) retaliatory discharge in violation of the Tennessee Public Protection Act ("TPPA"), Tenn. Code Ann. § 50-1-304 and the THRA, and (5) disability discrimination under the Americans with Disability Act [*Id*. at ¶¶ 37–84].[2]

---

[2] On August 9, 2023, United States Chief District Judge Travis R. McDonough dismissed Plaintiff's claim under the TMLA and her intentional infliction of emotional distress claim [Doc. 29 pp. 7–11, 21–24].

3

## II. ANALYSIS

The parties' dispute is governed under Rule 26 of the Federal Rules of Civil Procedure. Rule 26, which states:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Courts have explained that the "scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad." *Meredith v. United Collection Bureau, Inc.*, 319 F.R.D. 240, 242 (N.D. Ohio 2017) (quoting *Lewis v. ACB Bus. Serv., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998)). Courts have cautioned, however, that "[d]iscovery requests are not limitless, and parties must be prohibited from taking 'fishing expeditions' in hopes of developing meritorious claims." *Bentley v. Paul B. Hall Reg'l Med. Ctr.*, No. 7:15-CV-97-ART-EBA, 2016 WL 7976040, at *1 (E.D. Ky. Apr. 14, 2016). "[T]he [C]ourt retains the final discretion to determine whether a discovery request is broad or oppressive." *Id.* (citing *Surles v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007)).

With respect to proportionality, "there is now a specific duty for the court and the parties to consider discovery in the light of its 'proportionality to the needs of the case[.]'" *Turner v. Chrysler Grp. LLC*, No. 3:14-1747, 2016 WL 323748, at *1 (M.D. Tenn. Jan. 27, 2016) (citation omitted). "Instead of facilitating costly and delay-inducing efforts to look under every stone in an e-discovery world populated by many stones, the new rule 'crystalizes the concept of reasonable limits on discovery through increased reliance on the common-sense concept of proportionality.'"

4

*Helena Agri-Enters., LLC v. Great Lakes Grain, LLC*, 988 F.3d 260, 273 (6th Cir. 2021) (quoting John G. Roberts, Jr., 2015 Year-End Report on the Federal Judiciary 6 (2015)).

The movant bears the burden of showing that the discovery requests are relevant to the issues in the case. *In re Envision Healthcare Corp. Sec. Litig.*, No. 3:17-CV-01112, 2020 WL 6750397, at *2 (M.D. Tenn. Nov. 16, 2020) (citation omitted). "If relevancy is shown, the party resisting discovery bears the burden of demonstrating why the request is unduly burdensome or otherwise not discoverable under the Federal Rules." *Id*. (quoting *United States v. Carell*, No. 3:09-0445, 2011 WL 2078023, at *2 (M.D. Tenn. May 26, 2011)).

The Court will address the remaining disputes in the order as presented in their status report [Doc. 42].

### A. Interrogatory Nos. 13–15

These interrogatories state:

> Interrogatory 13. Please provide the name, address, telephone number, and job title of each person who reported to Scott Leslie or was assigned to the district over which Scott Leslie was District Manager and who was also accused of or investigated for discrimination or harassment from 2019 to the present.
>
> Interrogatory 14. Please provide the name, address, telephone number, and job title of each person who reported to Scott Leslie or was assigned to the district over which Scott Leslie was District Manager and who also requested or was provided with an accommodation due to his or her pregnancy or physical or mental health condition from 2019 to the present.
>
> Interrogatory 15. Please provide the name, address, telephone number, and job title of each person who reported to Lisa Poe or was assigned to any store over which Lisa Poe was manager and who was accused of or investigated for discrimination or harassment from 2019 to the present.

[Doc. 39-1 pp. 20–21].

5

Plaintiff states that in order to establish a prima facie case under the statutes that she alleges Defendants violated, she must show that "she was treated differently than similarly situated employees outside the protected class" [Doc. 39 p. 8]. She asserts that she "is entitled to discovery of sufficient information that would allow her to identify comparators" [*Id*. at 9]. Defendants respond that they do "not have a system that permits [them] to efficiently search for internal complaints, and so complying with these requests is overly burdensome and not proportional to the needs of the case" [Doc. 40 p. 10]. They explain that "[t]o identify individual employees would require a person-by-person review of over 400 people, as Mr. Leslie had over 300 reports and Ms. Poe had over 70 reports during the requested time frame" [*Id*.].

According to the Sixth Circuit, in order to be similarly situated, comparators "must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell v. Toldeo Hosp.*, 964 F.2d 577, 583 (6th Circ. 1992) (citations omitted); *but see Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998) (explaining that courts cannot "assume . . . that the specific factors discussed in *Mitchell* are relevant factors in cases arising under different circumstances, but should make an independent determination as to the relevancy of a particular aspect of the plaintiff's employment status and that of the non-protected employee").

Based on the parties' positions, it appears that they have not discussed how to narrow the universe of potential comparators. Instead, Plaintiffs state that these discovery requests seek relevant information, and Defendants respond that they are not proportional to the needs of this case. The Court **ORDERS** the parties to meet and confer to determine if appropriate parameters can be put into place so that Plaintiff can obtain discovery relevant to comparators but in a way

that lessens the burden imposed on Defendants for searching such records. The Court **ORDERS** the parties to file a joint status report on this issue on or before **April 26, 2024**.

2.   RFP Nos. 2–10

These requests seek employees' files [Doc. 39-1 pp. 4–6]. Plaintiff explains as follows: No. 2 seeks the employee files of the individuals whom Defendants identified in their initial disclosures; No. 3 seeks the employee files of Plaintiff's supervisors; No. 4 seeks the employee file of the ultimate decision maker; No. 5 seeks the employee files of the individuals who participated in the investigation that allegedly led to Plaintiff's termination; No. 6 seeks the employee files for the individuals who participated in the investigation relating to Plaintiff's complaints; and Nos. 7–10 seek the employee files of the individuals who are similarly situated to Plaintiff. [Doc. 39 pp. 10–11]. With respect No. 2, Plaintiff states that she "is entitled to know if any of the individuals that [Defendants] claim[] [they] may use to support [their] defenses have any adverse information or history of disciplinary action in the employee files that could be used for impeachment" [*Id*. at 11]. In addition, with respect to Nos. 3–6, she states that she is also entitled to "any adverse information or history of disciplinary action in their employee files that could be used for impeachment or to contradict [Defendants'] purported defense" [*Id*.]. And she asserts that she is entitled to the "employee files of potential comparators" [*Id*.].

Defendants respond that Plaintiff seeks the production of 90+ individuals' files [Doc. 40 p. 5]. Defendants acknowledge that the court may "order production of personnel files of Plaintiff's supervisors or comparators, if the information contained therein is relevant to show the [c]ompany's reasons for terminating employment were pretextual" [*Id*. at 6 (citation omitted)]. According to Defendants, "In an effort to resolve the issue, [they] produced the performance

reviews and disciplinary actions, if any, of Plaintiff's direct supervisors during the relevant time frame (Mr. Leslie and Ms. Poe) and for Ms. Morefield (the subordinate employee whom Plaintiff pushed over with her pelvic area and then squatted over her face)" [*Id*. at 7]. Further, Defendants state that the "production of personnel files of the remaining 85+ individuals, which include Plaintiff's subordinate employees and the investigators of complaints raised by and about Plaintiff, would be incredibly burdensome and not proportional to the needs of the case" and they are "not relevant" [*Id*. at 8]. Defendants also state that Plaintiff has not established any comparators, stating, "Plaintiff seeks information and documents regarding a large group of employees who are not similarly[]situated to her" [*Id*. at 9].

"[B]ecause of the extremely private nature of personnel files, courts generally do not order production of such files except upon a compelling showing of relevance by the requesting party.'" *Miller v. Uchendu*, No. 2:13-cv-02149-SHL-dkv, 2016 WL 11784214, at *3 (W.D. Tenn. Mar. 21, 2016) (quoting *Stratienko v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, No. 1:07-CV-258, 2008 WL 4442492, at *5 (E.D. Tenn. Sept. 25, 2008)). A personnel file is not protected by any recognized privilege, but the Sixth Circuit has stated that there is a "valid interest" in protecting the privacy of these files. *Grays v. Mayorkas*, No. 21-10526, 2022 WL 386020, at *5 (E.D. Mich. Feb. 8, 2022) (quoting *Knoll v. Am. Tel. & Tel. Co.*, 176 F.3d 359, 365 (6th Cir. 1999)).

With respect to No. 2 (i.e., employee files of the individuals Defendants identified in their initial disclosures), the Court finds that Plaintiff has not sufficiently explained why the information in these files are relevant to the issues in this case. *See Moody v. Honda of Am. Mfg., Inc.*, No. 2:05-CV-0880, 2006 WL 1785464, at *6 (S.D. Ohio June 26, 2006) ("The Court agrees that a request for personnel files is overbroad and that such files may contain a variety of information which is both personal to the employees whose files are requested and which is irrelevant to the

8

Case 3:23-cv-00058-TRM-DCP   Document 44   Filed 04/16/24   Page 8 of 16   PageID #: 481

litigation at hand."). With respect to Nos. 3–6 (supervisors, the ultimate decision maker, and the employees who participated in the investigations against Plaintiff), Plaintiff states that she needs "adverse information or history of disciplinary action" [Doc. 39 p. 11]. Defendants state that they have "produced the performance evaluations and disciplinary actions, if any, for Plaintiff's district manager and store manager and for the subordinate employee who reported that Plaintiff had sexually harassed her" [Doc. 42 p. 4]. To the extent not already produced, the Court **ORDERS** Defendants to produce the performance evaluations and disciplinary actions, if any, for Plaintiff's supervisors, the ultimate decision maker, and the employees who participated in the investigations within **fourteen (14) days** of entry of this Memorandum and Order. *See Nelson v. Tennessee Coll. of Applied Tech.*, No. 21-CV-2255-TLP-TMP, 2024 WL 1097201, at *2 (W.D. Tenn. Mar. 13, 2024) ("[C]ourts have granted motions to compel when the plaintiff sought personnel records for employees alleged to have been involved in the discriminatory practice." (citing *Hill v. Motel 6*, 205 F.R.D. 490, 496 (S.D. Ohio 2001) (finding that the plaintiff's deposition testimony that an employee was involved in the termination was sufficient to establish good cause to permit the plaintiff to discover the employee's personnel file) and *Person v. Progressive Logistics Servs., LLC*, No. 1:05-CV-150, 2006 WL 8442660, at *5 (E.D. Tenn. Jan. 27, 2006) (allowing the defendants the option of a limited production of documents from the requested personnel files because "the employees whose personnel files have been requested were allegedly involved in or have knowledge about, among other things, the alleged fabrication of information about Person, investigation of Person, Person's work at dock D, and/or the decision to terminate or not contract with Person")).

With respect to Nos. 7–10, Plaintiff states that she needs the personnel files of her comparators. Defendants dispute these employees are comparators. While some of the

9

information in a comparator's personnel file is generally discoverable, *see Hatfield v. Covenant Med. Grp., Inc.*, No. 3:20-CV-152-JRG-HBG, 2021 WL 6327691, at *3 (E.D. Tenn. Mar. 10, 2021) ("While some information in an employee's personnel file is relevant in determining other similarly situated employees, other information typically found in personnel files (i.e., garnishments) is not relevant."), it is not clear to the Court whether the universe of comparators has been discussed and/or defined. For the reasons set forth above, *see supra* pp. 5–6, the Court **ORDERS** the parties to meet and confer on this issue and file a joint status report on or before **April 26, 2024.**

### 3. Request Nos. 14–15

These requests state:

14. Please produce the full and complete file of any investigation which You conducted of Ms. Owensby's complaints of discrimination, harassment, or violations of federal or state laws, rules, or regulations.

15. To the extent not already produced, please produce all e-mails, text messages, or other written communications that mention any complaints made against Ms. Owensby; any investigation of Ms. Owensby or her conduct; Ms. Owensby's complaints of discrimination, harassment, or violations of federal or state laws, rules, or regulations; any investigation of Ms. Owensby's complaints of discrimination, harassment, or violations of federal or state laws, rules, or regulations; the termination of Ms. Owensby's employment; Ms. Owensby's EEOC charge, the EEOC charge filed by Joshua Owensby, or this lawsuit.

[Doc. 39-1 pp. 7–8].

Plaintiff asserts that RFP No. 14 seeks documents that are "relevant to establish that [Defendants] failed in [their] obligation to prevent and correct harassment and the hostile work environment experienced by [her]" [Doc. 42 p. 5]. In addition, Plaintiff states that these documents are "also relevant to establish that [Defendants were] aware of [her] complaints, and when [they]

became aware" [*Id.*]. Plaintiff contends that "[f]or documents generated by in-house or outside counsel or at the direction of in-house or outside counsel, [she] is willing to limit this [r]equest to documents generated prior to the date she filed her EEOC charge" [*Id*. at 4]. For documents, however, not drafted by an attorney or at the direction of an attorney, Plaintiff argues that they are not privileged [*Id.*]. Defendant responds that it has "produced all non-privileged responsive documents" [*Id.*]. The parties take similar positions with respect to Request No. 15 [*See id*. at 7].

Based on the parties' arguments, it is not clear to the Court whether this dispute has been resolved. Specifically, it is not clear to the Court whether Plaintiff is challenging Defendants' assertions of any privilege. The Court **ORDERS** the parties to provide a joint status report on this issue on or before **April 26, 2024**. To the extent Plaintiff is challenging Defendants' assertions of privilege, however, the parties may file appropriate motions as the Court does not have sufficient information to rule on any privilege assertions.

4. **Request Nos. 23 and 25**[3]

These requests seek "a copy of any sexual harassment complaint(s) that have been made against Jonathan Fiorella[,]" including "all records related to the investigation of the complaint(s)" and a "copy of any complaint(s) that have been made against Kelsea Morefield[,]" including "all records related to the investigation of the complaint(s)" [Doc. 39-1 pp. 9–10]. Plaintiff states that these individuals are comparators and these documents "are probative of how [Defendants] treated those who were similarly situated to [her] and who were accused of conduct similar to the purported misconduct that [Defendants] claim" is the reason for terminating Plaintiff [Doc. 42 pp. 7–9]. Further, Plaintiff asserts that such information is not protected by the work product doctrine

---

[3] The parties represent that they have resolved Request No. 24.

or the attorney-client privilege [*Id*. at 7–8]. Defendants respond that they have "produced non-privileged, responsive documents" [*Id*. at 7].

Based on the parties' arguments, it is not clear to the Court whether these disputes have been resolved. Specifically, it is not clear to the Court whether Plaintiff is challenging Defendants' assertions of any privilege. The Court **ORDERS** the parties to provide a joint status report on this issue on or before **April 26, 2024**. To the extent Plaintiff is challenging Defendants' assertions of privilege, however, the parties may file appropriate motions as the Court does not have sufficient information to rule on any privilege assertions.

### 5. Request Nos. 26, 27, 30, 32–40, and 43–46

These requests state as follows:

No. 26. Please produce all loss prevention reports or audit records for Store 17817 and visit notes from January 1, 2022, to the present.

No. 27. Please produce the point-of-sale logs compared to the immunization prescriptions verification timestamp form January 1, 2022, to June 2022 for Store 17817 in Wartburg, TN.

No. 30. Please produce the HIPAA Privacy Signature Log for Store 17817 in Wartburg, TN from January 1, 2022 to December 31, 2022.

No. 32. Please produce the Sudafed invoices for Store 17817 in Wartburg, TN from January 1, 2022, to December 31, 2022.

No. 33. Please produce the controlled substances invoices for Store 17817 in Wartburg, TN from January 1, 2022, to December 31, 2022.

No. 34. Please produce the Medicare/Medicaid Drive Thru/ Delivery signature sheets for Store 17817 in Wartburg, TN from January 1, 2022, to December 31, 2022.

No. 35.  Please produce the Prescription Activity Log Book for Store 17817 in Wartburg, TN from January 1, 2022 to December 31, 2022.

No. 36.  Please produce any work orders for the Pharmacy Gate Lock for Store 17817 in Wartburg, TN from January 1, 2022, to December 31, 2022.

No. 37.  Please produce the Rx Bin Reconciliation Reports for Store 17817 in Wartburg, TN from January 1, 2022, to December 31, 2022.

No. 38.  Please produce a copy of the PIC Change Inventories for Store 17817 in Wartburg, TN from January 1, 2022, to December 31, 2022.

No. 39.  Please produce the log for the pharmacy keys for Store 17817 in Wartburg, TN from January 1, 2022, to December 31, 2022.

No. 40.  Please produce any policy related to Catalina coupon usage or loyalty card usage by Your employees that was in effect in 2021 or 2022.

No. 43.  Please produce a copy of the Weekly Manager Pharmacy Checklist for Store 17817 in Wartburg, TN from January 1, 2022, to December 31, 2022.

No. 44.  Please produce all records of Buprenorphine/Naloxone Scripts sold under TennCare with days supply and qty dispensed compared to script directions for Store 17817 in Wartburg, TN from January 1, 2022, to December 31, 2022.

No. 45.  Please produce a report of Nystatin 100,000 units/g prescriptions billed to TennCare with NDC listed for Store 17817 in Wartburg, TN from January 1, 2022 to December 31, 2022.

No. 46.  Please produce the perpetual inventory by NDC of Nystatin 100,000 units/g for Store 17817 in Wartburg, TN from January 1, 2022, to December 31, 2022.

[Doc. 39-1 pp. 11–14].

The parties dispute the relevancy of the above requests. Plaintiff states that "[e]ach of these [r]equests seek the production of documents that are relevant to [her] claim under the TPPA and [her] complaints of [Defendants'] ongoing violations of federal and state law" [Doc. 42 p. 10]. She asserts that the requests are "narrowly tailored to cover a single store, a very specific topic, and a very specific and very short period of twelve (12) months" [*Id*.]. Defendants state that "[t]hese [r]equsts seek voluminous documents" that "are not relevant to Plaintiff's claims in this case, as [Defendants'] regulatory compliance and investigation into Plaintiff's compliance related complaints (which occurred after Plaintiff's termination from employment) are not on trial here" [*Id*. at 10–11 (citation omitted)]. Defendants assert that they have "produced the non-privileged documents related to [their] investigation into Plaintiff's compliance-related complaints and ha[ve] identified the privileged documents in [their] Privilege Log" [*Id*. at 12]. In their brief, Defendants state that "Plaintiff did not raise any allegations that would have caused [Defendants] to review the documents sought by Request Nos. 26, 27, 33, 38, 40, 43, 44, 45, and 46 as part of [their] investigation" [Doc. 40 p. 11].

In Plaintiff's Amended Complaint, she states she reported various illegal activities [Doc. 17 ¶ 35]. She alleges, "Defendants engaged in illegal activities as defined by the TPPA by violating multiple federal and state laws and regulations governing controlled substances, the administration of COVID-19 testing and the operation of licensed pharmacies" [*Id*. ¶ 68]. She pleads that "[i]n the alternative, [Plaintiff] reasonably believed that Defendants engaged in [these] illegal activities" [*Id*. ¶ 69]. "[The] TPPA does not require that plaintiff be correct that the reported activity was illegal—only that [s]he had a reasonable belief that it was." *Chattem Chem., Inc.,* No. 1:20-cv-00065, 2022 WL 1809316, at *2 (E.D. Tenn. Feb. 2022) (citation omitted). Given that Plaintiff must show that her belief was reasonable, the Court finds some discovery warranted.

Defendants argue that with respect to Nos. 26, 27, 33, 38, 40, 43, 44, 45, and 46, "Plaintiff did not raise any allegations that would have caused [them] to review the documents sought by [these] [r]equests" [Doc. 40 p. 11]. Given that Defendants do not appear to dispute that the remaining requests were part of Plaintiff's allegations, the Court **ORDERS** Defendants to respond to Nos. 32, 34–37, and 39 **within fourteen days** of this Memorandum and Order. With respect to the remaining requests (Nos. 26, 27, 33, 38, 40, 43–46), the Court does not have sufficient information about whether the subject matter of these topics relate to Plaintiff's alleged complaints to the Loss Prevention Department and to her manager [*See* Doc. 17 ¶ 35]. The Court **ORDERS** the parties to meet and confer to discuss whether the subject matter of these discovery requests relate to Plaintiff's complaints to her manager and the Loss Prevention Department. The parties **SHALL** include this issue in their joint status report due on or before **April 26, 2024**.

6. **Request Nos. 41 and 42**

No. 41.  Please produce all time records for all employees who worked at Store 17817 in Wartburg, TN from January 1, 2022, to July 1, 2022, whether employed part-time, full-time, regularly, or as a floater or temporary employees.

No. 42.  Please produce the weekly schedule for Store 17817 in Wartburg, TN from January 1, 2022, to July 31, 2022.

[Doc. 39-1 p. 13]. It appears that the parties have resolved this issue, but there is a discrepancy about the temporal parameters of these requests. Plaintiff has offered to limit the time period for these requests as "the period that [Plaintiff] worked at the Walgreens location in Wartburg—from *February* to June 2022" [Doc. 42 p. 12 (emphasis added)]. Defendants have "agreed to produce the time records for the employees of the Wartburg location for the time period that Plaintiff worked in that store (*March* – June 2022)" and they have agreed to "search for work schedules for the Wartburg location for the time period that Plaintiff worked in that store (*March* –June 2022)"

[*Id*. (emphasis added)]. Based on the parties' representations, the Court finds this issue to be resolved and that the parties **SHALL** meet and confer to determine the period that Plaintiff worked at the Wartburg store.

### III. CONCLUSION

For the reasons explained above, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's Motion to Compel Discovery and for Sanctions [**Doc. 39**].[4]

**IT IS SO ORDERED.**

ENTER:

Debra C. Poplin
United States Magistrate Judge

---

[4] Given that the Court has only granted the motion in part and considering that the parties need to meet and confer on several issues, the Court finds an award of attorneys' fees not warranted. *See* Fed. R. Civ. P. 37(a)(5)(A)(iii).